STATE OF VERMONT

ENVIRONMENTAL COURT

| | | |
|---|---|---|
| Village of Essex Junction, Plaintiff, | } | |
| | } | |
| v | } | Docket No. 107-7-99 Vtec |
| | } | |
| Hauke Building Supply, Inc., | } | |
| Defendant. | } | |

| | | |
|---|---|---|
| In re: Appeals of Brooks Pharmacy | } | |
| | } | |
| | } | Docket Nos. 119-7-99 Vtec and |
| | } | 176-9-99 Vtec |
| | } | |
| | } | |

Decision and Order

These three[1] consolidated cases all involve the size of the signs on the Brooks Pharmacy facade in the shopping center owned by Hauke Building Supply, Inc. at 77 Pearl Street in the Village of Essex Junction. In Docket No. 107-7-99 Vtec, the Village took enforcement action against the property owner, but not against the tenant, asserting both that the A Brooks@ facade sign was too large, and that the additional signs in the windows also violated the sign ordinance. In Docket No. 119-7-99 Vtec, Brooks Pharmacy appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Village of Essex Junction, upholding the Notice of Violation which formed the basis of that enforcement action. In Docket No. 176-9-99 Vtec, Appellant Brooks Pharmacy appealed from a decision of the ZBA upholding the Zoning Administrator= s denial of a permit for an alternative sign. Defendant Hauke Building Supply, Inc. and Appellant Brooks Pharmacy are represented by Daniel P. O= Rourke, Esq.; the Village is represented by David A. Barra, Esq.

After summary judgment issues were addressed, an evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows.

Some time in the late summer or early fall of 1998, Brooks Pharmacy proposed to move into the Essex Shopping Center in the Heavy Commercial zoning district of the Village of Essex Junction, into space formerly occupied by the > Ben Franklin= and > New York Cleaners= stores. The space is on the corner of the shopping center; the shopping center lot is a corner lot facing two streets. On October 5, 1998, Brooks Pharmacy= s engineers wrote to the Zoning Administrator regarding their plans to upgrade the facade, enclosing a photo of what they called an A identical existing facade@ in St. Albans, and enclosing a plan showing the proposed facade and signage. The plan showed the A BROOKS@ sign and the A Pharmacy@ to scale with what was eventually actually installed at the Essex Junction location, but did not note a square footage of surface area for the sign. On the plan under the heading A signage@ appeared the following specifications:

54" BROOKS

30" PHARMACY

As these specifications are given in inches, they may have referred to the height of the letters in the two respective signs, but the plan contains no further explanation.

The height of the eave line extending along the front of the building is 10 feet; a green metal facade is raised above that line to a vertical height of 21 feet, 11 inches. The front portico portion of the building extends approximately 14 feet out from the front of the facade, and is covered by a peaked roof oriented with a ridgeline perpendicular to the front of the building. From the plans in evidence, the peak of that roof is 32 feet above the finished grade, and the eaves of that roof are approximately 21 feet above the finished grade.

Section 714 of the Village= s Land Development Code governs signs. In a commercial zoning district such as this one, ' 714(E) and ' 714(D)(2) provide that each business is allowed one wall sign, except that if a business is on a corner lot, ' 714(E) allows two wall signs, one on the facade facing each street. Section 714(D)(2) limits the size of the wall sign to five percent of the facade of the business (or 20 square feet, whichever is greater).

Section 714(D) establishes the method of computing a business= A facade area.@ It is computed as A the overall length of wall multiplied by the height of the vertical portion of the wall from the finish grade to the eave or parapet,@ (or 8 feet, whichever is greater). The term A peak@ is not used in ' 714(D); the Code does not appear to have contemplated[2] that the gable end of a building could face the street or hold a sign, and hence could require a facade area calculation. Neither the term A eave@ nor the term A parapet@ is defined[3] in the Code. We conclude from the testimony at trial that the A eave@ of a building is the line at which a sloping or horizontal roof meets a vertical wall, and a A parapet@ is a wall or extension of wall extending above the roof line at the edge of a roof.

First, under the Code, it appears that the business would only have been entitled to a single sign in the front of the building, not to two signs for the two segments of the front of the building. ' 714(D)(2). A corner lot is entitled to two signs, but they may not both be placed on the front of the building; rather, they are to be placed so that one sign faces one street and the other sign faces the other street. If both segments of the front of the building were to have been combined for the calculation of the sign area, then it appears from ' 714(C)(2) that the area between the A BROOKS@ sign and the A Pharmacy@ sign should have been included in the area computation, which in the present configuration would make it impractically large. As the Village does not contest allowing two signs, one for each segment of the front of the building, the facade area must be calculated separately and independently for each sign. This method is contrary to both parties= apparent assumption that the entire facade length should be used in calculating the A BROOKS@ sign, disregarding the A Pharmacy@ sign altogether, simply because the Village does not contest the size of the Pharmacy sign or the allowance of a second sign (as they were allowed in the 1998 permit).

The length of the facade attributable to the Brooks building equals 88 feet, of which 44 feet is attributable to the front portico portion of the front of the building where the A BROOKS@ sign is located, and 44 feet is attributable to the remainder of the front of the building where the A Pharmacy@ sign is located. As to the appropriate height measurement, the Village argues that the measurements should be made to the bottom of the parapet, while Appellant argues that the measurement should be made to the top of the parapet. The Court concludes from the evidence and the language of the Code, resolving any ambiguity in favor of the landowner, that the correct measurement height to use is the top of the parapet. Although the language used in the Code is a measurement A to@ the eave or parapet, without specifying the top or the bottom of the parapet, the bottom of a parapet is located at what would otherwise be the eave line. If the measurement were made to the bottom of the parapet, there would have been no need to use both terms in the regulation: the term > parapet= would have been surplusage. Regulations, like statutes, are

construed to give meaning to each word. Moreover, if the purpose of the surface area calculation is to insure that signs will be proportional to the surface on which they are located, it makes sense for the visual surface area[4] of the parapet to be included in the calculation. Otherwise, there would be no difference in allowed sign area, whether a building had or did not have a parapet.

Applying this conclusion to the portion of the front of the building where the A Pharmacy@ sign is located, the height to the top of the parapet is 21 feet, 11inches (21.917 feet). Using the length of 44 feet and the parapet height of 21.917 feet, the available sign area for the A Pharmacy@ sign would be five percent of 964.35 square feet, or a total of 48.2 square feet. The parties agree that the A Pharmacy@ sign measures 30 square feet.

For the front portico portion of the front of the building where the A BROOKS@ sign is located[5], the Village states that A it seems that the parties agree@ that the front portico portion of the building where the Brooks sign is attached is a > parapet.= The Village argues for a measurement height of 10 feet to the bottom of the overhang where the sign is located, referring to that location as the bottom of the > parapet.= Appellant also argues that the front portico portion of the building is a > parapet,= but argues for a measurement height of 32 feet to its peak. Both parties ignore the fact that the front portico portion of the building has a depth of 14 feet, encloses or covers space, and is covered by its own roof, with eaves of its own. The Court concludes from the evidence and the language of the Code, resolving any ambiguity in favor of the landowner, that the correct measurement height to use for the front portico portion of the building is 21 feet: the height at the eave of the roof covering that front portico. Using the length of 44 feet and the eave height of 21 feet, the available sign area for the front portico segment would be five percent of 924 square feet, or a total of 46.2[6] square feet.

In Docket No. 107-7-99 Vtec, the Village brought an enforcement action, seeking to hold Hauke Building Supply to the terms of a permit issued in 1998 for the signs, which allowed an area of 44 square feet for the A BROOKS@ sign and an area of 30 square feet for the A Pharmacy@ sign. On October 23, 1998, A Brooks Drug@ as Applicant and A Hauke Building Supply@ as Owner of Record, applied to extend the facade of the Brooks building and to place new signs on the facade. The application was submitted by David Burke, of O= Leary Burke Civil Associates, PLC, the Vermont agent for the project applicants. Attached to the 1998 application was a plan that showed the A Brooks@ sign and the A Pharmacy@ sign to scale as constructed, but did not state a proposed square footage for the signs. The application shows the facade area calculation in the permit application filled in with the number A 88@ for the facade length, the number A 10@ for the A height of wall to the eave,@ and the number A 880@ filled in for the facade area, and the calculation of the maximum size of wall sign allowed filled in as A 44@ square feet. The portion of the application showing the width and length of the proposed sign was not filled in, but a drawing to scale was provided with the application showing two alternatives for the facade of the building, plus a side elevation. The first alternative, not installed and not further discussed in these appeals, showed A Brooks Pharmacy@ in a unified sign on the front portico segment of the building and a A Convenience Foods@ sign on the remainder of the front of the building. The second alternative, which was installed, showed a larger A Brooks@ sign on the front portico segment of the building and a A Pharmacy@ sign on the remainder of the front of the building. The A Brooks@ sign as installed has an area of approximately 130 square feet. The A Pharmacy@ sign as installed has an area of approximately 30 square feet.

From the evidence at trial, it appears that the calculations that the allowable area of the A BROOKS@ sign was 44 square feet, and that the allowable area of the A Pharmacy@ sign was 30 square feet, were filled in by the Zoning Administrator, using a horizontal measurement of 88 feet and a vertical measurement of 10 feet at the eaves to calculate the A BROOKS@ sign, and apparently mistakenly allowing the A Pharmacy@ sign due to the corner placement of the building. He also wrote those designations in on a copy of the scaled drawing of the signs submitted with the application. While it is the practice of the Zoning Administrator to send a copy of the approved application to the applicant, there are no indications that the practice was

followed in the present case, or whether it was or would have been sent to the applicants= agent Mr. David Burke, or to either of the applicants. They did not receive it until after the signs had been installed and an inquiry letter had been sent to Mr. Burke by the Zoning Administrator.

Mr. Burke did pick up the actual zoning permit, meant for posting on the building itself. However, that permit just refers to the approval of A new signs,@ and would not have had a copy of the application or the plan attached to it. After the permit was issued, and before the signs were installed, the Zoning Administrator recalls having had a conversation with a regional representative of Brooks Pharmacy, Inc., a Mr. Westergren from New York State, and telling him that permits had been issued for a 44-square-foot A BROOKS@ sign and a 30-square-foot A Pharmacy@ sign. Under the circumstances of this case, we cannot conclude that any representative of Defendant Hauke Building Supply knew of the area limitation for the BROOKS sign, before its installation in February of 1999. The Notice of Violation on appeal in Docket No. 119-7-99 Vtec was issued to Defendant Hauke Building Supply, Inc. on March 31, 1999[7]. It states a violation of the permit= s limitation of the A BROOKS@ sign to 44 square feet, and a violation of the Code.

Because the limitation of the A BROOKS@ sign to 44 square feet as handwritten on the permit application was not proved to have been provided to Defendant or Defendant= s agent prior to the sign= s being installed, and because the Zoning permit itself neither states the limitation nor attaches a copy of the approval, judgment in the enforcement action must be entered in favor of Defendant Hauke Building Supply, Inc. as to any penalties for the violation. The sign must be removed, but it may be replaced by a sign calculated in accordance with the Code, which is larger than the 44 square feet allowed in the permit.

Based on the foregoing, it is hereby ORDERED and ADJUDGED as follows:

In Docket No. 107-7-99 judgment is entered in favor of Defendant Hauke Building Supply, Inc. as to any penalties for the violation. Judgment is entered in favor of the Village in that the sign must be removed, but may be replaced by a sign calculated as ordered and adjudged in Docket No. 176-9-99 Vtec, below.

In Docket No. 119-7-99, the Notice of Violation is upheld in that the A BROOKS@ sign violates the Code and must be removed and replaced with a complying sign, as analyzed in this decision.

In Docket No. 176-9-99, the May 1999 application for approval of the 130-square-foot A BROOKS@ sign as constructed is DENIED. Appellant-Applicant is entitled, under the Code and construing every ambiguity in favor of the applicants, to a A BROOKS@ sign of a maximum of 64.4 square feet if the A Pharmacy@ sign remains in place, and a maximum of 94.4 square feet if the A Pharmacy@ sign is removed.

It appears to the Court that this decision and order concludes the three appeals. Any party believing otherwise should so inform the other parties and the Court by telephone on or before May 29, 2001, in which case we will hold a brief telephone conference to discuss the matter on June 1, 2001 at 12:45 p.m.

Done at Barre, Vermont, this 21st day of May, 2001.

_____
Merideth Wright
Environmental Judge

---

## Footnotes

1.     In Docket No. 120-7-99 Vtec, Brooks Pharmacy had appealed from the ZBA's denial of a variance for the sign as installed; this appeal was withdrawn and closed at the hearing on the merits of the remaining cases.

2.     The Village may wish to consider amendments to its sign regulations to clarify circumstances such as arose in the present case.

3.     See footnote 2.

4.    While a rational calculation method for the gable end of a building, or for a triangular parapet, might well be to approximate the area of the triangle rather than to measure it identically to a rectangular wall area, as suggested in the June 1999 letter referred to in Exhibit 6, the Village's Code does not provide such a calculation method.

5.    Even if the "Pharmacy" sign were disregarded and the area allowed for the "BROOKS" sign were to be calculated from the entire 88-foot-long facade, there is no prohibition in the Code against dividing it into separate portions for the purpose of applying the appropriate measurement method to each distinct portion.

6.    Even if the excess allowed sign area not used by the "Pharmacy" sign were to be added to the sign area allowed under the Code for the "BROOKS" sign, the "BROOKS" sign would only be entitled to an area of 64.4 square feet. If the "Pharmacy" sign were removed, and the area allowed for the "BROOKS" sign were to be calculated from the entire 88-foot-long facade, the "BROOKS" sign would only be entitled to an area of 94.4 square feet.

7.     It is internally dated 1998.